UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JUSTIN GHOGOMU, | CIVIL DIVISION |
| Plaintiff, | Case No. 2:21-cv-264 |
| v. | |
| VOLTUS, LLC, | |
| Defendant. | |

**COMPLAINT AND JURY DEMAND**

A. *Preliminary Statement*

1. The plaintiff Justin Ghogomu brings this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* to redress violations of his right to be free from employment discrimination, harassment and retaliation based upon his race. Because of the violations described herein, this Court is also empowered to exercise pendant jurisdiction pursuant to the Pennsylvania Human Relations Act ("PHRA"), 43 P.S. § 951 *et seq.* A jury trial is demanded.

B. *Jurisdiction*

2. The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e *et seq.*, 28 U.S.C. § 1331 and under the doctrine of pendant jurisdiction.

3. On or about May 7, 2019, the plaintiff filed a timely charge alleging discrimination with the Equal Employment Opportunity Commission ("EEOC"), docketed at 533-2020-01495. This charge was simultaneously cross-filed with the Pennsylvania Human Relations Commission.

4. The EEOC issued a Notice of Right to Sue dated February 9, 2021.

5. This Complaint is filed within 90 days of receipt by the plaintiff of the Notice of Right to Sue.

C. *The parties*

6. The plaintiff is an adult individual who resides at 500 Filmore Road, Forest Hills, Allegheny County, PA 15221.

7. The defendant Voltus, Inc. ("Voltus") is an entity doing business in the Commonwealth of Pennsylvania. At all times material, the defendant had a place of business located at within this district, specifically 106 Isabella Street, Suite 6060, Pittsburgh, Allegheny County, PA 15212.

8. The defendant is an energy management company serving industrial, commercial and institutional customers.

9. At all times material, the defendant employed more than fifteen employees.

10. The defendant was the plaintiff's employer and is an employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

D. *Factual Background*

11. The plaintiff was employed by Voltus from May 1, 2018 through November 18, 2019.

12. The plaintiff's position was Manager of Inside Sales. His responsibilities included ensuring that the business was expanding and hiring and training individuals to make calls to generate sales.

13. The plaintiff performed all of the functions of his job in a competent fashion and was considered to be a good worker.

14. While he was an employee, the plaintiff was subjected to discriminatory comments and treatment by his co-workers and managers on account of his race (African American), treated differently than similarly situated white employees and his termination was a result of discriminatory animus.

15. The plaintiff was the only black individual employed by Voltus until the summer of 2019.

16. As stated above, throughout his employment, the plaintiff was subjected to inappropriate comments and disparate treatment by management as further detailed below:

    (a) Fran Parker, Director of Sales, asked the plaintiff how many sales representatives he had sex with during a recent corporate "getaway", insinuating that he must have had multiple partners because of his race.

    (b) At a conference in Pittsburgh in July 2019, Parker and Gregg Dixon (Chief Executive Officer) repeatedly asked the plaintiff to get Dixon marijuana to help with his insomnia. The plaintiff told them that he did not know any dealers. Parker was annoyed by this and said, "Don't any of your homies have any?"

    (c) During a meeting in Boston in July 2018, a picture of a Caucasian Sales Director's picture was compared to a picture of an African American from an old movie. The black actor had pronounced African American features, including very dark complexion, a broad nose and full lips. Both the sales director and the person to whom he was compared had hoodies on. Mark Plante, President, found it hilarious and said that they were doppelgangers. Every one else in the meeting also found the comparison to be very funny.

    (d) During a company function in Pittsburgh, Dixon asked the plaintiff about his preference in music. When the plaintiff responded that he liked rap, Dixon said, "That's not real music!"

    (e) Some one left an open book on his desk that spoke disparagingly of rappers in a satirical fashion.

    (f) Parker told the plaintiff that she "dated a black guy before". She was trying to get a reaction from the plaintiff, but, when he did not take the bait, she further explained that the black guy she dated was Jesus Shuttlesworth. She was making fun because Jesus Shuttlesworth is the

    name of the main NBA hopeful character in Spike Lee's film, 'He Got Game'. Jesus is a black kid from the ghetto with dreams of making it into the NBA.

 (g) The plaintiff put forward qualified black candidates to be hired from time to time for sales positions; however, they were always vetoed by Dixon and/or Todd Krause, Sr. V.P. of Sales (and the plaintiff's direct supervisor). When the plaintiff pointed out that all the black candidates (both male and female) he suggested never got hired, Krause told him that the decision makers at the company's customers were "older white men" who wanted to see and deal with attractive white women.

 (h) The plaintiff was the only employee who was not provided with a six-month review, which was used to gauge an employee's development and progress. All similarly situated white employees were given this review.

17. In the time period immediately before his termination, the plaintiff was delivering solid results by any objective standard. He was already 125% to plan with over four months to go in the company's fiscal year. With the top selling months still ahead in this seasonal business, the plaintiff was on trajectory to be 300% of plan. Shortly before his termination, the plaintiff received an email noting that was ahead of plan and doing great work. Further, the plaintiff had not received any discipline – oral or written – associated with the performance of his work.

18. On November 18, 2019, the plaintiff reported to work as usual. He tried to access his computer system but found that he had been "locked out". Shortly thereafter, he was called into a meeting with Krause, who informed the plaintiff that two other employees had been fired (one because he was not producing and the other because he was not a "cultural" fit with the company). Krause quickly changed the subject and said, "but the headline to that is that your employment has been terminated."

19. The plaintiff pressed Krause for the reason his employment was being terminated, but Krause could not come up with a definitive explanation, instead referring something that had occurred nearly a year prior, specifically a situation during a "boot camp" training session that

the plaintiff was running where two of the employees showed up late. The plaintiff scolded them for showing up late and told them that dedication to the job for which they were hired required them to be at work and to attend all meetings on time. The plaintiff's conduct during this event was entirely professional and the plaintiff was never told that he had done anything inappropriate.

20. The plaintiff pointed out that this "incident" was not controversial or problematic in any way; the plaintiff had been following orders and running a boot camp for the company's underperforming employees.

21. Krause retreated and said that there was another "incident" that he had "heard about" in California. The plaintiff responded that he was not aware of any such incident, and invited Krause to explain. Krause said that he didn't want to get into it because he had to leave and start the sales floor. The plaintiff said that he had never done anything wrong and Krause responded that "there is nothing you can do; I already tried". He asked for the plaintiff's key and fob and walked the plaintiff to the elevator.

22. The reason given for the plaintiff's termination was nothing more than a pretext and the real reason that he was fired was because of his race.

## FIRST CAUSE OF ACTION

23. The preceding paragraphs are incorporated herein by reference as if they were set forth at length.

24. The plaintiff is African American and thus is protected against discrimination, harassment and retaliation on the basis of his race pursuant to Title VII.

25. The plaintiff was qualified for his position.

26. Despite his qualifications, the plaintiff was terminated. The reasons given for his discharge were a pretext.

27. The defendant's discharge of the plaintiff was because of his race in violation of Title VII.

28. The defendant's violation of Title VII was committed with intentional or reckless disregard for the plaintiff's federally protected right to work in an environment free of race discrimination.

## SECOND CAUSE OF ACTION

29. The preceding paragraphs are incorporated herein by reference as if they were fully set forth herein.

30. As a direct and proximate cause of its actions, detailed above, the defendant has violated the plaintiff's right to be free from discrimination and harassment under the Pennsylvania Human Relations Act, 43 Pa. C.S.A. § 951 *et seq.*

WHEREFORE, the plaintiff respectfully requests judgment be entered in his favor and against the defendant and that the defendant be required to provide all appropriate remedies under Title VII and the PHRA, including attorney's fees and costs.

Respectfully submitted,

*/s/ Michael J. Bruzzese*
Michael J. Bruzzese
Pa. I.D. No. 63306
2315 Koppers Building
436 Seventh Avenue
Pittsburgh, PA 15219
(412) 281-8676
Counsel for the plaintiff

Dated: February 24, 2021